# Exhibit C

*Reuben Harley settlement agreement (ended Q1 2007)*

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") dated as of February 1, 2006, is between Reuben Harley, on the one hand, and Mitchell & Ness Nostalgia Company, Mitchell & Ness, and Peter Capolino on the other.

**1.0**     **Recitals and Definitions.** This Agreement shall use the following defined terms and is made with reference to the following facts:

     1.1.     "Nostalgia" shall mean Mitchell & Ness Nostalgia Company.

     1.2.     "M&N" shall mean Mitchell & Ness.

     1.3.     "The Mitchell & Ness Companies," shall mean Nostalgia and M&N collectively.

     1.4.     Nostalgia and Harley are parties to the following agreements:

         1.4.1.    Settlement Agreement and Release dated June 30, 2005 (the "Original Settlement Agreement").

         1.4.2.    Employment Agreement dated June 30, 2005 (the "Employment Agreement").

         1.4.3.    Shareholders' Agreement dated June 30, 2005 (the "Shareholders' Agreement")

         1.4.4.    Subscription Agreement dated June 30, 2005.

     1.5.     Pursuant to the terms of the Original Settlement Agreement and subject to the terms of the Shareholders' Agreement, Harley owns Eleven and 11/100 (11.11) Shares of Mitchell & Ness Nostalgia Company stock (the "Harley Nostalgia Stock").

     1.6.     Harley desires to resign from Nostalgia and sell the Harley Nostalgia Stock back to Nostalgia.

     1.7.     Nostalgia desires to terminate the Employment Agreement and repurchase the Harley Nostalgia Stock.

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

2.0 **Repurchase of Stock.** Nostalgia will repurchase the Harley Nostalgia Stock for $50,000 (fifty thousand dollars). No later than February 28, 2006, Nostalgia will deliver to Harley a check for $50,000. On signing this Agreement, Harley will deliver to Mitchell & Ness the stock certificate for the Harley Nostalgia Stock. After this delivery, the Shareholders' Agreement shall immediately terminate.

3.0 **Termination of Employment Agreement.** The parties hereby terminate the Employment Agreement effective as of the date of this agreement. Nostalgia shall pay Harley $225,000 (two hundred and twenty five thousand dollars), less applicable tax withholdings as follows:

3.1. $150,000, less applicable tax withholdings no later than February 28, 2006, which will be made by check payable to Harley and his attorneys, Martin T Sobol & Associates, P.C.; and

3.2. $75,000 in twelve equal monthly installments, each less applicable tax withholdings, beginning on April 1, 2006.

All tax withholdings pursuant to this paragraph 3 shall be made consistent with the Mitchell & Ness Company's normal payroll processes and practices. If Harley files for unemployment compensation, Mitchell & Ness will not contest this filing.

4.0 **Press Release.** The Mitchell & Ness Companies and Harley will issue the press release attached hereto as Exhibit A.

5.0 **Confidentiality and Non-disparagement.** Harley agrees that all matters relating to the terms, negotiation and implementation of this Settlement Agreement shall be confidential and are not to be disclosed other than as necessary to disclose to outside attorneys, lenders, auditors or accountants for business reasons, taxing authorities, or in response to an order of a court of competent jurisdiction or subpoena issued under the authority thereof. Harley further agrees that he will not disparage the business or personal reputation of the Mitchell & Ness Companies or Capolino. Without limitation on the generality of the forgoing, Harley specifically agrees that he will not seek, accept, or give any interviews with any print, radio, or television media relating to Mitchell & Ness in any way. If any media seek comment from Harley relating to Mitchell & Ness he will limit himself exclusively to referencing the Press Release described in paragraph 4, above. If Harley breaches the terms of this paragraph 5.0, Mitchell & Ness will have no further obligation to pay any monthly payments that remain due pursuant to paragraph 3.2, above.

6.0 **Harley Release.** Harley hereby generally releases and discharges Mitchell & Ness Nostalgia Company, Mitchell & Ness, Peter Capolino, and each of their predecessors, successors (by merger or otherwise), parents, subsidiaries, affiliated entities, divisions and assigns, together with each and every of their present, past and future officers, directors, shareholders, general partners, limited partners, employees and agents and the heirs and executors of same (herein collectively referred to as the "Mitchell & Ness Group") from any and all suits, causes of action, complaints, obligations, demands, or

claims of any kind, whether in law or in equity, direct or indirect, known or unknown, suspected or unsuspected (hereinafter "Claims"), which Harley ever had, now has, or may have against Mitchell & Ness Nostalgia Company, Mitchell & Ness, Peter Capolino, the Mitchell & Ness Group or any one of them arising out of or relating to any matter, thing or event occurring up to and including the date of this Agreement. Harley's release specifically includes, but is not limited to:

> 6.1.1. any and all Claims in contract, tort, or under any statute;

> 6.1.2. any and all Claims for alleged employment discrimination or harassment on the basis of age, race, color, religion, sex, national origin, veteran status, disability, handicap and/or any other protected characteristic, and any and all Claims for violation of any federal, state or local statute, ordinance, judicial precedent or executive order, including but not limited to Claims under the following statutes: The Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, et seq., Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., the Civil Rights Act of 1866, the Civil Rights Act of 1870, the Americans with Disabilities Act, 42 U.S.C. §12101 et seq., the Family and Medical Leave Act of 1993, as amended, the Employee Retirement Income Security Act of 1974, as amended, or any comparable federal, state or local statute;

> 6.1.3. any and all Claims for attorneys' fees and costs; and

> 6.1.4. any and all other Claims for damages, including compensatory and punitive damages.

> Harley understands that this Release extends to all of the aforementioned Claims and potential Claims which arose on or before the date of this Agreement, whether now known or unknown, suspected or unsuspected, and that this constitutes an essential term of this Agreement. Harley understands and acknowledges the significance and consequence of this Agreement and of each specific release and waiver, and expressly consents that this Agreement shall be given full force and effect according to each and all of its express terms and provisions, including those relating to unknown and unsuspected Claims, demands, obligations, and causes of action, if any, as well as those relating to any other Claims, demands, obligations or causes of action herein above-specified.

7.0 **Reinstatement.** Employee hereby waives any right or claim he may have to employment, re-instatement, re-assignment or re-employment with The Mitchell & Ness Companies, or any of its parents, subsidiaries, divisions or affiliated entities. Employee agrees not to seek employment with the Mitchell & Ness Companies in the future.

8.0 **Mitchell & Ness Companies' Release.** The Mitchell & Ness Companies hereby generally release and discharge Harley and his predecessors, successors (by merger or otherwise), parents, subsidiaries, affiliated entities, divisions and assigns, together with each and every of their present, past and future officers, directors, shareholders, general

partners, limited partners, employees and agents and the heirs and executors of same (herein collectively referred to as the "Harley Group") from any and all suits, causes of action, complaints, obligations, demands, or claims of any kind, whether in law or in equity, direct or indirect, known or unknown, suspected or unsuspected (hereinafter "Claims"), which The Mitchell & Ness Companies ever had, now has, or may have against Harley, the Harley Group or any one of them arising out of or relating to any matter, thing or event occurring up to and including the date of this Agreement. Company's release specifically includes, but is not limited to:

8.1.1.  any and all Claims in contract, tort, or under any statute;

8.1.2.  any and all Claims for attorneys' fees and costs; and

8.1.3.  any and all other Claims for damages, including compensatory and punitive damages.

**9.0     Miscellaneous Provisions.**

9.1.    All remedies at law or in equity shall be available to the Mitchell & Ness Companies and any member of the Mitchell & Ness Group for the enforcement of this Agreement. This Agreement may be pleaded as a full bar to any claim that Harley may assert against Mitchell & Ness or any member of the Mitchell & Ness Group.

9.2.    Harley and the Mitchell & Ness Companies hereby waive their respective right to a trial by jury in any litigation relating to this Agreement.

9.3.    This Agreement shall be governed and construed in accordance with the laws of the Commonwealth of Pennsylvania, without regard to conflict of law principles, and any applicable laws of the United States of America, in all respects, including construction, validity and performance.

9.4.     This Agreement supersedes any and all prior agreements, understandings and negotiations relating to the subject matter hereof and constitutes the entire agreement of the parties relating to such subject matter. The parties to this Agreement execute it freely and voluntarily. No promise, understanding, representation, inducement, condition or warranty not set forth herein has been made or relied on by any party hereto. Each party has consulted with counsel of its own choice and has received advice about the legal effects of entering into this Agreement.

9.5.    The parties to this Agreement and their counsel have participated jointly in the negotiation and drafting of this Agreement. For all purposes, this Agreement shall be deemed to have been drafted jointly by all parties.

9.6.    Each party is responsible for his or its own attorneys' fees and costs.

9.7    This Agreement shall be binding upon on the parties hereto and upon their respective successors and assigns.

9.8.    No party shall be deemed to have waived any right under this Agreement, unless such party shall have delivered to each other party a written waiver signed by an authorized officer of such waiving party.  No delay or omission in the exercise of any power or remedy shall be construed to be a waiver of any default or an acquiescence therein.

9.9.    The provisions of this Agreement are severable, and if any portion of this Agreement is deemed legally invalid or unenforceable, the remainder of this Agreement shall survive and remain in full force and effect.

9.10.    The captions and headings contained in this Agreement are for convenience and reference only and in no way define, describe, extend or limit the scope of intent of this Agreement or the intent of any provision contained herein.

9.11.    This Agreement may be executed in counterparts, each of which shall be deemed an original, but such counterparts together shall constitute one and the same instrument.  The executed Agreement may be delivered by means of facsimile transmission.

9.12.    This Agreement may only be amended, modified or supplemented by a written instrument signed by both parties.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

**MITCHELL & NESS NOSTALGIA COMPANY**

By _____
Peter Capolino, President

**MITCHELL & NESS**

By _____
Peter Capolino, President

_____
PETER CAPOLINO

_____
REUBEN HARLEY

Approved as to Form:

_____
Andrew K. Fletcher
Pepper Hamilton LLP
500 Grant Street, 50th Floor
Pittsburgh, PA 15219

Counsel for Mitchell & Ness

_____
Martin J. Sobol
Martin J. Sobol & Associates, P.C.
1760 Market Street, Suite 1200
Philadelphia, PA 19103

Counsel for Reuben Harley

-6-



## EXHIBIT A TO FEBRUARY 1, 2006 SETTLEMENT AGREEMENT

**FOR IMMEDIATE RELEASE**
                                    **Contact: Erin Ritter**
                                    **Direct dial: 267.765.0676**
                                    **rittere@mitchellandness.com**

### REUBEN HARLEY, A.K.A. "BIG RUBE" RESIGNS AS VP OF MARKETING AT MITCHELL & NESS

February 1, 2006 (PHILADELPHIA, PA): Reuben Harley, Vice President of Marketing for Mitchell & Ness, has announced his resignation as of February 1st, 2006. Mr. Harley began his tenure at the company in April 2001. During his employment, Reuben spearheaded the phenomenal growth that the firm achieved through December of 2005.

Mr. Harley brought marketing innovation, product development, and grass roots product placement to the firm that had previously been a rather unknown maker of historically accurate sports uniforms. His background in the history of sports, fashion, and music all contributed to the extraordinary growth of the company. Reuben has decided to pursue his dream of his own streetwear company 'R Harley Collection' Inquiries regarding Reuben's new brand should be directed to bigrubeent@msn.com.

"He will surely be missed," states Peter Capolino, President and owner of Mitchell & Ness. "His impact on the company will be enduring far beyond his employment. We wish him great luck and will do anything that we can to support Reuben's future endeavors."

### About Mitchell & Ness

Mitchell & Ness was founded in 1904 as a golf and tennis equipment manufacturer and retailer. By 1933, M&N was also supplying uniforms to professional teams, including the Philadelphia Eagles, Athletics and Phillies. Inspired by this rich tradition, M&N opened its Nostalgia division in the late '80s. As *the* pioneer in the vintage uniform field, Mitchell & Ness' reputation for quality and authenticity is recognized worldwide. With exclusive licenses from the NBA, NFL, NHL, MLB and CLC, Mitchell & Ness has been "Defining Authentic" for over 100 years. For more information, visit www.mitchellandness.com.