# Exhibit D

<u>SETTLEMENT AGREEMENT AND RELEASE</u>

THIS SETTLEMENT AGREEMENT AND RELEASE is made by and between Reuben Harley, an individual and his heirs, assigns, executors, agents and representatives ("Harley") on the one side, and Mitchell & Ness Nostalgia Company (the "Company" or "Mitchell & Ness") on the other.

## RECITALS

This Agreement is made with reference to the following facts:

1.  Harley was employed by the Company, most recently as the Vice President of Marketing, until resigning on or around May 5, 2005.

2.  Harley has asserted certain claims against the Company that he was promised additional compensation and/or equity interest in the Company for past work marketing Mitchell & Ness products.

3.  The Company would like to incent Harley to return to employment with the Company and to resolve any and all claims Harley has or claims to have against the Company.

4.  To incent Harley to return to employment with the Company, as well as to avoid further the expense and uncertainty of litigation, the parties have agreed to the terms of this Agreement.

<u>AGREEMENT AND RELEASES</u>

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants and obligations contained herein, Harley and Company, each intending to be legally held bound, agree as follows:

1.  <u>Consideration.</u>

    (a) The Company will re-hire Harley pursuant to the terms and conditions of that certain Employment Agreement a copy of which is attached hereto as <u>Exhibit A</u>.

    (b) The Company will pay Harley a signing bonus as follows:

    (i)     $100,000 to be paid to Harley on or before July 23, 2005 through the Company's normal payroll process and subject to all required withholding as follows: (A) $50,000 payable to Martin J. Sobol, Esquire, and (B) the balance payable to Harley.

    (ii)    $100,000 to be paid to Harley on or before December 31, 2005 through the Company's normal payroll process and subject to all required withholding.

(c) The Company will issue to Harley shares of stock in the Company equal to ten (10) percent of the then-issued and outstanding stock subject to Harley's execution of the Shareholders Agreement, a copy of which is attached hereto as <u>Exhibit B</u>, and the Subscription Agreement, a copy of which is attached hereto as <u>Exhibit C.</u>

(d) Each of the parties further agrees as follows: (i) upon signing and delivering the Employment Agreement referenced in Section 1(a) above, all of the parties' respective duties and obligations under Section 1(a) shall be satisfied; (ii) upon the Company making each of the payments referenced in Section 1(b), all of the Company's duties and obligations under Section 1(b) shall be satisfied; and (iii) upon Harley signing and delivering the agreements referenced in Section 1(c) all of his duties and obligations under Section 1(c) shall be satisfied, and upon the Company signing and delivering the agreements and issuing the shares referenced in Section 1(c) all of its duties and obligations under Section 1(c) shall be satisfied.

2. <u>Release</u>.

(a) Harley hereby generally releases and discharges Company and its predecessors, successors (by merger or otherwise), parents, subsidiaries, affiliated entities, divisions and assigns, together with each and every of their present, past and future officers, directors, shareholders, general partners, limited partners, employees and agents and the heirs and executors of same (herein collectively referred to as the "Company Group") from any and all suits, causes of action, complaints, obligations, demands, or claims of any kind, whether in law or in equity, direct or indirect, known or unknown, suspected or unsuspected (hereinafter "Claims"), which Harley ever had, now has, or may have against Company, the Company Group or any one of them arising out of or relating to any matter, thing or event occurring up to and including the date of this Settlement Agreement and Release. Harley's release specifically includes, but is not limited to:

(i)     any and all Claims in contract, tort, or under any statute;

(ii)    any and all Claims for attorneys' fees and costs; and

(iii)   any and all other Claims for damages, including compensatory and punitive damages.

(b) Company hereby generally releases and discharges Harley and its predecessors, successors (by merger or otherwise), parents, subsidiaries, affiliated entities, divisions and assigns, together with each and every of their present, past and future officers, directors, shareholders, general partners, limited partners, employees and agents and the heirs and executors of same (herein collectively referred to as the "Harley Group") from any and all suits, causes of action, complaints, obligations, demands, or claims of any kind, whether in law or in equity, direct or indirect, known or unknown, suspected or unsuspected (hereinafter "Claims"), which Company ever had, now has, or may have against Harley, the Harley Group or any one of them arising out of or relating to any matter, thing or event occurring up to and including the date of this Settlement Agreement and Release. Company's release specifically includes, but is not limited to:

(i)     any and all Claims in contract, tort, or under any statute;

- 2 -

(ii)    any and all Claims for attorneys' fees and costs; and

(iii)    any and all other Claims for damages, including compensatory and punitive damages.

3. <u>Acknowledgment</u>. Harley understands that this Release extends to all of the aforementioned Claims and potential Claims which arose on or before the date of this Settlement Agreement and Release, whether now known or unknown, suspected or unsuspected, and that this constitutes an essential term of this Settlement Agreement and Release. Harley understands and acknowledges the significance and consequence of this Settlement Agreement and Release and of each specific release and waiver, and expressly consents that this Settlement Agreement and Release shall be given full force and effect according to each and all of its express terms and provisions, including those relating to unknown and unsuspected Claims, demands, obligations, and causes of action, if any, as well as those relating to any other Claims, demands, obligations or causes of action herein above-specified.

4. <u>Remedies</u>. All remedies at law or in equity shall be available to Company and any member of the Company Group for the enforcement of this Settlement Agreement and Release. This Settlement Agreement and Release may be pleaded as a full bar to the enforcement of any claim that Harley may assert against Company or any member of the Company Group.

5. <u>Attorneys' Fees</u>. Each party is responsible for his or its own attorneys' fees and costs.

6. <u>No Admissions</u>. Neither the execution of this Settlement Agreement and Release by Company nor the terms hereof constitute an admission by Company or by any agent of the Company of liability or unlawful conduct.

7. <u>Confidentiality</u>. Harley acknowledges that he has not disclosed, discussed or publicized the negotiation, terms or fact of this Settlement Agreement and Release with anyone other than his attorney. He agrees that he will not disclose, discuss or publicize the negotiation, terms or fact of this Settlement Agreement and Release, directly or indirectly, to any person or entity, except to his accountant, his attorney, and as required by law.

8. <u>Entire Agreement</u>. This Settlement Agreement and Release contains the entire agreement of the parties with respect to the subject matter hereof, and shall be binding upon their respective heirs, executors, administrators, successors and assigns.

9. <u>Severability</u>. If any term or provision of this Agreement shall be held to be invalid or unenforceable for any reason, then such term or provision shall be ineffective to the extent of such invalidity or unenforceability without invalidating the remaining terms or provisions hereof, and such term or provision shall be deemed modified to the extent necessary to make it enforceable.

10. <u>Facsimile/Counterparts.</u> This Settlement Agreement and Release may be executed either by a manual signature or a facsimile version of a manual signature in any number of counterparts, each such counterpart being considered an original, and when taken together all

- 3 -

counterparts shall be deemed one document, and shall be deemed effective as of the date indicated.

11. <u>Amendments</u>. Neither this Settlement Agreement and Release nor any term hereof may be orally changed, waived, discharged, or terminated, and may be amended only by a written agreement between the parties hereto.

12. <u>Governing Law</u>. This Settlement Agreement and Release shall be governed by the laws of the Commonwealth of Pennsylvania, without regard to the conflict of law principles of any jurisdiction.

13. <u>Legally Binding</u>. The terms of this Settlement Agreement and Release contained herein are contractual, and not a mere recital.

[Signature Page Follows]

PT: #221692 v2 (4R2402!.DOC)

IN WITNESS WHEREOF, the parties acknowledging that they are acting of their own free will have voluntarily caused the execution of this Settlement Agreement and Release as of this day and year written below.

_____
Reuben Harley

Date: 6-30-05

Witness: _____


MITCHELL & NESS, NOSTALGIA COMPANY

By: _____

Title: PRESIDENT

Date: 6-30-05

Witness: _____